Good morning Your Honor. My name is Ron Lansman and I represent the Appellant Maine Pooled Disability Trust. I have 11 minutes. I'd like to reserve one of those minutes for rebuttal, if I may. The question before the court is when, if ever, is a person who puts money into a special needs trust themselves to be denied Medicaid benefits for long-term care as though they had given the money away to someone else. We have two very different approaches by the parties here. Our approach is to suggest that you read the statute, that you look at the entire statute and all of its provisions. When you do that, what you'll see is a coordinated, coherent whole by which Congress decided to deal with the problem of the abusive use of trust in the Medicaid context. The place to start, there are two provisions that we're concerned with. They're all in 42 U.S.C. 1396 P. Subsection D deals with trusts. It deals with trust funding, trust distributions, and it has exceptions. Subsection C deals with transfers. It's really the administrative provision for dealing with transfers. It says when the penalty period starts, when it ends, how long it's going to be, what services it applies to. The thing to see about Subsection D is that it is a complete, coherent, and comprehensive provision governing all use of trust in the Medicaid context. It is extremely broad in scope. It covers every possible trust a Medicaid applicant might use, and it has no gaps. It has no exceptions. This was the argument very well written in your brief, but where I think at least I will start, and it would be helpful to have you provide your thoughts, is with the text of the statute, and maybe that text then leads us to serious questions. Sure. I'm having trouble getting by C1A, which seems to be quite a general categorical rule that any disposition of assets for less than fair market value triggers this penalty, subject to certain exceptions. Right. And one of the exceptions is indeed a type of trust, which suggests that but for that exception, that disposition to that trust would have been covered. Right. So that's exactly what troubled the district court. I understand that, Your Honor. So you have to look at the breadth of D. D covers every possible trust comprehensively, and it puts them in two categories. So category number one... But what are you saying about, before we get to D, what are you saying about C1A? Are you saying I should edit that, cross out some language in it? It doesn't apply to trusts because trusts are covered by subsection D. But then why is there an exception in C1A for a type of trust? Oh, I mean C2B. C2B. If C doesn't cover, if the type of transfers addressed in C1A does not include transfers to trusts, then what would be the exception? Oh, because, Your Honor, D in its comprehensive covering of trusts identifies which trust fundings are transfers and refers those to C. That's exactly why some trust transactions are in C because D sends them there. And the provision is in page 68 of our statutory appendix. C2, I always have trouble with the numbers, C2B, Little Roman 2. It says if you put money into a trust and it's not available, treat that as a transfer. But you could just as easily say, it seems to me, that C1A is a comprehensive treatment of transfers, including transfers to trusts, and Little IV sends us to D4. It's really the other way around, Your Honor. So the problem with that, the problem with Tell me what in the language tells me that including the trust described in subsection D4 is not a sending to D4, but there's something in D4 that is a sending to C that would tell me that your reading of D should trump C. Okay, we've got a few pieces together. So let me start with C2B3, which is on page 67. That's the provision that allows an individual to make transfers to their disabled child. It also allows them to make transfers to a trust for their disabled child. And it specifically refers, I couldn't be clearer, including a trust in subsection D4. So it is a transfer to somebody's, someone's exempt D trust, but it's not the applicant's trust. It's their child's trust. Right. Doesn't the fact that that's there, Little III is there, mean that if we crossed out III, those transfers would be covered by the general rule, III is yet another exception to the general rule? No. They're only in C because D puts them there. And D puts them there because D, subsection Little Roman II on the previous page, because that says, I'm sorry, the later page, page 68, if you put money into a trust from which you can get no benefit, treat that as a transfer under subsection C. It's D that specifically puts some trust transfers into C. That's the only way they get there, Your Honor, is because D puts them there. I'm maybe missing something here, but I think another way of thinking about this, and you tell me what's wrong, is that the reason these exceptions are in C, that deal with transfers to trust, is because Congress put them there in C. And it wanted to carve out certain transfers to trust that would be exempt from the general rule. And it has a cross-reference then to D. I don't even understand the concept of saying that D put them there. I don't know what that means. Your Honor, it's in the statute. Subsection III, it's on page 68. It says, any portion of the trust from which no payment could under any circumstances be made, a no-benefit trust, shall be treated as assets disposed of for purposes of subsection C. Congress wrote that to say there are some trust transactions we want to put under the transfer rule, and one of those, the key one here, is a trust that can't be for your benefit. If this reading is right, just so I follow, does that mean on page 67 in the blue brief, if we look at subsection IV at the top, does that mean the penultimate line of IV, when it says benefit of an individual, has to mean another individual? I think that's what it means, Your Honor. I think that's correct. If it meant the individual, would you have a problem? Oh, absolutely. If it said the individual, as it does elsewhere in the shore, absolutely. But it doesn't. So the key maybe way to resolve this question of whether the right way to understand this parenthetical in IV is that D makes a special provision that for purposes of this type of thing, look to C. Otherwise, with respect to trust, pay no mind to C, only look at D. That's correct, Your Honor. Is dependent on us reading the phrase an individual in IV to mean another individual? Yes, Your Honor. Rather than the individual. That's right. So could you just help me figure out why I should think that when elsewhere in this provision, an individual also seems to mean the individual. That's a good question, and I haven't quite looked at all the phrases in the statute, but let me give you what I have, which I think is complete. Sometimes they say for the benefit of another. If they had said that, you'd clearly be golden. Sometimes they say the individual. Sometimes they say such individual. Sometimes they say an individual. And so it just sort of seems mysterious to me whether an individual must mean another individual or the individual. Well, let me put this in the legislative. I think the legislative history really is just floridly clear on this one point, Your Honor. Both houses of Congress passed their versions of the act in 1993. Both had sub-division D-IV trusts. They only had the A trust and the B trust, but the B trust, the income trust, like the C trust, has no age limit. The original proposal of the report that goes to Congress, it's I think on page 158 of the appendix, says specifically this provision has transfer exceptions. But that bill did not have C-3 or 4 in it. Those were added later. I'll answer the question, Your Honor. Thank you. So the bill goes to conference. The only thing it has is D with no trust exceptions. Nobody thought at that time that you needed an exception to fund your own special needs trust. They were authorized and there was no exception to allow it. Now, Congress adds two exceptions at that point. They add the one for a trust for your own disabled child. The law already allowed transfers to your disabled child. Congress is now saying if you set up a trust that you can get no benefit, that's a transfer and that would be penalized. So you couldn't put money into a trust for your disabled child. You just had to give it to the child yourself. So Congress very wisely said, that's crazy. Let's allow transfers to trust for disabled children. That's Little Roman 3. They also added Little Roman 4. And you need to see the context here, Your Honor. At that point in time, the only permissible transfers were to, in A and B, were to a spouse for a disabled child, for a minor child in some situations, for a caregiving child, for siblings in certain situations. That was it. What 4 does is allow transfers to roughly 50 million other people. This is a huge, a massive expansion of what you're allowed to do in giving away money to qualify for Medicaid. It goes from a handful of people, your immediate relatives, and not even all of them. Not your healthy child who doesn't provide care. Not your loving sibling who never lived in the house with you. But Congress now says, we're going to allow more transfers. We're going to allow transfers to anyone in the country under 65 who's disabled. Now, the question is, did Congress think it had to put in that provision to also allow people to fund their own special needs trust? There's not a hint of a whisper in the legislative history or in this context to suggest that that was Congress's purpose. And although grammatically you could say, yeah, well, it might mean that, the question is, what was Congress's intent and what was it trying to achieve? And the answer is, it was doing something other than allowing funding of your own trust. It was vastly expanding the transfer law. If we read 4 as not covering the funding of your own trust, in other words, we read and to mean another individual and not the individual doing the transferring, then you still have the problem of what you've said. If you've taken this transaction out of the language, which carves out an exception to the general rule, so now you're back to the general rule, and I still haven't heard you. Well, the point is the general rule doesn't apply. Why? Because the trust provision is designed to be the complete comprehensive. Well, Your Honor, let me sit with you a second. The transfer provision is designed to be the complete transfer provision. Well, the problem with that, Your Honor, is that the trust provision has specific transfer rules. It says treat as a transfer. And the transfer provision has some trust rules. Well, Your Honor, to me the interrelationship is that Congress intended the trust provision to be complete. Just so I understand your argument in the form of the argument as a matter of interpretation, one way that I'm hearing you is that as a textual matter, you're not disagreeing with the question Judge Skiatt is asking you, in the sense that if I knew nothing, I flew down from Mars, and I started reading this text, it might be unclear whether an individual means any individual, another individual, the individual. It might be unclear whether that parenthetical in four is something that you pay attention to only if you got to D or whether that's suggesting that C itself encompasses those types of things. But you're saying it's certainly not clear as a textual matter which way to read that. And then if I understand you, you're saying if you understand the background and legislative history to this, it becomes clear how one has to read it, even if the text itself doesn't on its face resolve it. Even though grammatically there's an ambiguity. That's exactly right, Your Honor. Okay, just on that point, one way we would traditionally think about resolving this ambiguity, if in fact there was one, was CMS would have a pretty big role in resolving that question. CMS, according to one of the amicus briefs, did weigh in on the question, but I can't tell whether CMS, in any way's view, has taken a position on this question or not. Well, Your Honor, actually it's taken a number of positions, which is exactly why I think Skidmore says you can't really defer to them. We quote a provision in our brief, and I actually was looking at it last night, and there's actually language in what we call Transmittal 64, section 3259.6b, and it says irrevocable trusts, and it discussed transfers. And it lists what are the transfers that are subject to penalty. And it says if the person can get no benefit, funding it is a transfer. If money is used for someone else, that's a transfer. It never says putting money into a trust for your benefit is a transfer. It never says it's a transfer in the very place it ought to say it if it thinks that C1 broadly applies. So did you argue to the district court that there wasn't even a transfer here? Because if there was no transfer, then we're out of C altogether. I didn't see the district court addressing that. I'm sorry, Your Honor. Did you argue to the district court that we can ignore C because there's no transfer? Well, I don't remember, Your Honor, I'm sorry, I don't remember how we put it, but we think it is not a penalized transfer. I mean, Congress very intentionally, let me go back to what I came to do. I'm not even sure I saw that in your brief on appeal, that there's no transfer here. Well, no, there is no transfer because Congress made it not a transfer. My question was, did I miss something in your brief? I think you did. Okay. What we say is if you look at, once again, D is the framework. So D is meant to deal with trust, and it's really, I've got to say, I think it's a brilliantly constructed statute. Congress had a problem with people gaming the system and working their way through. So what did it do? It divided trust into two pools. There's the no benefit trust, which is a transfer, and then there's the any benefit trust, which is available. And, Your Honor, that thwarts Medicaid eligibility as well. Across the board, any trust you use is going to disqualify you from Medicaid unless you can fall into one of the exceptions. There's the transfer exceptions for third parties, and then there's the D4 exceptions for trust for your own benefit. Two questions. Please, Your Honor. If D4, the phrase individual means another individual. Right. If D4, I'm sorry, if not D4, C2B4. Right, right. Means another individual. Then it must be the case that D4 better not be referring to a trust for the individual. D4 is only for trust for the individual. That's my problem. You need C2B4. You need the words an individual to exclude the individual. Right? Just stick with me. I may disagree, but just so I get the... You need the phrase an individual in that little four to exclude the individual. So we went through why that's the case. But if the parenthetical in for is referring to a trust described in D4, and that trust is only a trust that is for the individual, then C2B4 starts to make no sense to me. Because it's including in the parenthetical a type of trust that you just said otherwise for is not talking about at all, because it's only talking about a trust for another person. So how do we resolve that problem? So the answer, Your Honor, is this. Look, this is a large statute. And as this and other courts have said, when you have a large statute, well, occasionally you'll have friction points, if I can so put it. And so I think that if you can read C2B4 as it could include trust for oneself, but the fact is that it's an exemption for a trust that was never subject to C. So is it slightly redundant? Yes, Your Honor. It is one little tiny piece of redundancy. But we can't get rid of that redundancy entirely if we adopt the opposite view. Right. The problem, though, with that, Your Honor, is then you run into a whole series of other redundancies and overlaps and inconsistencies. And that's your dilemma. You could tolerate the one very slight little redundancy in our position. I'm sorry? Last question is just a functional, practical question. If you're right, am I right in understanding that under this system, Congress contemplated that a billionaire could put $999 million in a trust for which they would be the beneficiary and still qualify for Medicaid? Your Honor, that's permissible under D4A. Any disabled person could put a billion dollars into a disability trust if they choose to. They'd be a damn fool to do it because of the tax consequences and payback. I mean, so Congress made a choice not to put in dollar limits. There are no dollar limits in D4A and there are no dollar limits in D4C. So that's just a reality under the system that Congress made a choice. You understand, if Congress starts to put in limits, then you get this problem about But are those ones where the person putting the money in would be the beneficiary also? Sure. D4A trust. Any billionaire who's disabled under 65 could put all their money into a D4A trust. The tax consequences would be catastrophic, but they could do that. All right. Thank you, Your Honor. I appreciate it. Good morning, Your Honors. May it please the Court. Thaddeus, you are on behalf of the Elder Trust, amici. You'll note that there are two sets of amici and we are one of them. I have four minutes, and in those 240 seconds, I'd like to make two points. And if you'll indulge me, I may even provide a bonus to answer one of Judges Cata's questions to my brother. My first point is to emphasize the importance of these trusts to elderly individuals because we think that goes to congressional intent. My second point is to elucidate the relevance of Transmittal 64, which was referenced before, which is the state Medicaid manual, and to explain why a double penalty exists under the state's interpretation, and that appears to be their key point of disagreement. On the first point, Congress intentionally designed a carve-out for its otherwise harsh trust rule, and that's the D4 trusts, to enable mom or grandma to buy with their own funds basic necessities that Medicaid will not pay for. Another way of explaining that is that they rejected full means testing. Certainly. And what in the congressional history do you point to that shows that Congress was trying to benefit people who had more money than those who were more destitute? Partly it's because a D4C trust is a pooled trust, and the reason that you pool trusts, as Congress, I believe, understood, is that you don't have enough money to do it yourself. So a D4A trust you could put in, as Barron said, a billion dollars. It would be rather unusual if you decided to pool your assets with a number of other individuals to scrape together enough cash to pay your trustee if you weren't already on the margins of being able to pay for these things otherwise. And these things, I would point out, are essentials. They are hearing aids. They are glasses. They are dentures. All things that one who is not on Medicaid. Are there restrictions that it can only be those types of things? It's not, Your Honor. So it could be a new car? It would be unlikely that a trustee as the fiduciary would authorize you to get a new car, unless the question was, as we point out brief, two elderly individuals, both disabled, living in different nursing homes who are married. I guess what I'm asking is what is the standard by which the trustee is supposed to be making judgments about what constitutes a legitimate payout? I believe it's the fiduciary obligations to the beneficiary in determining what types of things are important for their continued well-being. I'm not sure that you could reasonably say that a car or a house or something else would be that. These are institutionalized individuals for the most part. They are looking for things, as is the plaintiff in this case, crossword puzzles. Being able to hire an aide to come in and speak with them for an hour every day. Pardon me? How about investing in the market? I don't believe that would be appropriate. I believe that these are paying in to have amounts that are going to then be dispersed for the benefit of the individuals. The trustee, as any other trustee would say, I don't think playing in the market is what you need. I think what you're looking for here is a new set of shoes. But the point here, I believe, is that the state is taking the position that because mom is over 65 and disabled, she's being asked to choose between her Medicaid and her hearing aid. And we don't believe that's congressional intent. And the reason we don't believe that is congressional intent is not only because the statute says it, but also because, as Judge Barron pointed out, the statute appears to be ambiguous in some respects, some key respects. And when that happens, you look to things like legislative history or, as Judge Barron noted, you look to what CMS has said on this issue. And CMS has very clearly addressed this issue. Unlike the district court, which said that this is one of the easy provisions of Medicaid, CMS appears to disagree because they have a 75-page guidance document, the state Medicaid manual, that goes into extensive detail about what the purpose of these very limited trust provisions, at least textually, are and how they should be interpreted and applied by the states. And again, the state Medicaid manual is mandatory for the states. It says so right in Section 1 of the Medicaid manual. It's comprehensive. It's extensive. It's exhaustive. And CMS has expertise in this area. And the important part of Transmittal 64, and I quote, is in 3259.6G. And it says, because the trust provisions, that's subsection D, are more specific and detailed in their requirements for dealing with funds placed in trust than subsection C, the transfer provision, trust provisions are given precedence in dealing with assets placed in trust. And then there is an imperative command to these states. Quote, deal with assets placed in trusts exclusively under the trust provisions. In other words, when it comes to a trust asset, you start with D and you disregard C. And even the state recognizes this. The state in their brief on page 41 says, yes, that's right. If there is a conflict between the two, there's going to be a double penalty. But what about transfers to the trust? You just read to us as if it's a trust asset, then deal with under D. Correct. But we're dealing here with a transfer. I don't believe that CMS, when they're talking about that in Transmittal 64, they're referring explicitly to the transfer provision. They say when you have a conflict between the transfer provision, subsection C and D, and CMS is clearly indicating that those conflicts exist and they're so important that they need to give you a guidance and a rule as to how you handle that. They are saying use D only. And I think one conceptual issue here is that C and D follow numerically or alphanumerically. They don't necessarily follow directly. D is not derivative of C. It's really the next thing that Congress wants to talk about in a very long statute. Can you just help me with the textual point? Sure. I was going over with the counsel a minute ago. I take it for your reading it also has to be the case that in C2B4, the phrase an individual in the penultimate line of four has to mean another individual. I don't disagree with my brother, but I would offer a slightly separate, but I believe consistent reading. And that, again, is that D is the comprehensive trust statute. It's the black hole. Nothing that's a trust ever gets out of D. You start with D. Occasionally D in D3 tells you to do something with this trust asset. So you go down the flow chart. I say I've got a trust. What kind of trust do I have? Revocable, irrevocable. Congress then says, all right, you've got an irrevocable trust, like a pool trust. What do you do? It's either available, so you've got to spend it down before you can apply for Medicaid or qualify for Medicaid, or it's going to be deemed a transfer if you've already given it away. Go see C. Go see C's rule. So it directs you out there. Congress knew what it was doing when it did that because it directed people to C in D3. It doesn't do that in D4. There is no provision in D4 whatsoever that says, oh, and we should also be applying subsection C. Congress clearly knew how to apply subsection C to trusts. But C refers to D4. Correct. So you're there. So you have one of these trusts, and you're sent up to C. How do I deal with it? In those two provisions we were talking about, the child trust and the 65 trust. D4 is only talking about a trust in which the beneficiary is the seller. And your question is, what do you do with this parenthetical in the C section? So the parenthetical is clearly referring to that type of trust, but both you and the person sitting next to you We're taking the position that in C2B4, an individual has to mean another individual. So the odd thing is, 4 then is talking about trust for another individual. But it has a parenthetical that says it's including a distrust described in B4, which can only be a trust for the individual. So that's just a flat-out conflict. The reactor of that is making zero sense to me. So I think I'm taking no position on whether it's an individual or the individual. My point is that as to this parenthetical, which I think is the key, why does it reference subsection D4 here? That is a true statement. Those D4 trusts are exempt. But it's not true because C says it is. It's true because you start with D, and D says it is. Look at D4. There's no direction for you to go to subsection C whatsoever. And again, this goes back to my initial point. So in other words, just so I get it, your read of it would then be that the reason they include that parenthetical is to stress that 3 is not ousting D4. Correct. Absolutely. It's minorly surplusage. You would say, I don't understand why you're telling me about this. That's terrifying language. Don't be mistaken in thinking now that we've got this C2B4 language that we meant to override D4. Particularly where nothing in D4 indicates that you should be remotely looking at subsection C. Even though we're saying this about what we're saying now in C2B4, we also meant what we said in D4. Correct. And one thing to recall here is that those trusts that have been sent there by D3, those are trusts without a payback provision. So you have a trust that just says, put the money in. What do I deal with it? You're sent to C. D4 trusts are different because they have this payback provision. That's the last point I'd like to make. When the state agrees that Transmittal 64 says that there's a double penalty, you apply the trust rule. They said there's no double penalty here. All you have is a provision that says if you are a D3 trust and you've lost or you've given away your funds, you need to have a period of ineligibility imposed upon you. But after you serve that period of ineligibility, your Medicaid is free from their point out. Let's say that you have a D4 trust. Great. D4 gives you an option. You can either use the D3 rule so you can spend it down or you can be sent up to Section C and have a transfer penalty imposed. Or you can have the money to use for medical needs, but there's a catch. And that catch is you have to make sure that Medicaid, you have to agree in your trust document, that Medicaid gets paid back before any of your heirs gets a penny. If you're the person who is getting the benefit of the trust with the beneficiary, that indeed is a penalty because under the state's argument, you should be imposing both a subsection C ineligibility period, and after you've served it, you don't get Medicaid for free. Because your assets are in a D4 trust, you've got to pay back Medicaid. Two penalties for the same transaction of putting something into a D4 trust that we argue Congress is intending to completely exempt. So for those reasons, we believe that the district court erred. It is a complex statute. Transmittal 64 is, on this particular issue, persuasive. It's declarative. And its views, as well as the plain reading of the statute, require that the district court be reversed. Thank you. Good morning. May it please the Court. My name is Chris Todd from the Maine Attorney General's Office. So I would like to go through the statute and try to hopefully outline our view of the correct interpretation of subsections C and D. So we do start with subsection C, which says, which applies to Medicaid. A transaction in which a person, quote, disposes of assets for less than fair market value. So I think one argument one could make, although I don't think that the amici or the appellants are making it here, is that when you transfer your assets to your own irrevocable trust, that is not a transfer or disposal of assets. I don't think that's an argument that they're making. I think when I – Mr. Lansman just said he thinks they're making it. Well, when I – in my brief, when I said that I thought they were making that argument, they accused me of setting up a straw man and knocking it over. So if they're making an oral argument, it may be the first time. I think even though – and I just do want to address that argument in the event that the Court determines that that issue has been preserved. I think under a common sense meaning of the words disposal or transfer, and I think we all agree that Congress uses those terms interchangeably in the statute, I think when you take assets over which you have complete and unfettered control over and you give them to a trustee in an irrevocable trust where the trustee has complete and unfettered discretion to decide whether or not to make disbursements to you and where the trustee can then retain any assets that are left over after you pass away, our view is that under a common sense meaning of those terms, that is both a disposal and a transfer of assets. So I think that is one argument that one could make as to why this transaction doesn't come within subsection C. But if that's right, what's the point of the parenthetical? Of the parenthetical – In C. In C-4? Yeah. So I think the point there, and that gets to the other issue about – If disposal, if creating a trust for yourself where you're the beneficiary of it is not a transfer, that isn't the parenthetical – No, I'm sorry, but we argue that that is a transfer and a disposal. I know. Okay. I'm just saying, I'm trying to understand the opposite argument. Yes. Which I thought one of them, Mieke, does make that you're not disposing of the assets if you retain beneficial title to it. Right? Yeah. If that's true, there's no need for the parenthetical in C-2B-4, correct? That's right. Am I wrong? You're right, Your Honor, yes. Am I really right, or are you? No, you're definitely right, Your Honor. I think that parenthetical is important for two reasons, and I think this goes to the two other arguments one could make about why this transfer provision doesn't apply here. I think one argument you could make is that you sort of use the maxim that the specific governs the general, and I think that's the argument that Mr. Lanzman is making, that because the trust provision is so specific about trust, you only look to that when you're looking at a trust transaction. I think the parenthetical that you're referring to, Your Honor, necessarily means that can't be true, that necessarily subsection D must apply to trust transactions. Well, what do you make of the argument that Mieke made, which is that that's less true than it might seem because that including a trust phrase is not really doing any work other than reinforcing the point that what we said in D-4 we really meant, and nothing in C should lead you to think otherwise. Well, to be honest, I'm not quite following that argument, but what I do want to say, and let me say this first and see if this answers the question, but I think to the extent that we're looking at an individual, I think one argument you could make is that subsection C does apply to transfers to trust, but only when you transfer trust for someone else as the beneficiary, right? So I take money and I create a trust for some other individual. You could say that is a transfer, but not when I create a trust for myself. But I think the parenthetical and the fact that it says an individual and then the reference means that that can't be true because the trusts that are talked about in D-4, I mean in subsection D, are all trusts where the settler created it for the benefit of himself. But I think what the amici's response to that was is, well, precisely because that can't be true, the right way to understand the parenthetical is just clarifying for the reader and making plain that even we're saying this, but it's also true that trusts described in subsection D-4 are exempt also. I have not seen Congress using a mechanism like that before. I think our interpretation of the statute in this provision makes much more sense, which is Congress was carving out an exception for certain transfers to trust. It was saying that this includes the trusts that are referenced in subsection D, but then it limited the applicability of the exception to trust that benefit an individual under the age of 65. Suppose we accepted or assumed that an individual means another individual only and not the, so this transaction doesn't fit in Little 4. What I'm having trouble is understanding how that argument helps the other side because it seems it then just kicks them back to the general rule, and the only argument I heard on that was that, well, maybe there's no transfer, which you've just addressed. Yeah, Your Honor, I don't understand that argument either. It was an argument that they made below much more forcefully. They said that all of these exceptions, they said that I think there's eight exceptions to the transfer provision, and they said that most of them talk about transfers to another individual, like transfers to a spouse or to a child, and they said that means that this last one, transfers created to benefit an individual under 65 must mean another individual, but my response to that below was, well, that just takes them completely out of the exceptions, and there is no exception. What do you say, though, about the argument that your interpretation creates a, I believe the phrase double penalty, is if someone decides to go ahead and create one of these trusts, they get, I guess, it would delay their ability to get Medicare, and it would treat payments they receive from the trust as income, and I suppose it's theoretically possible that they could continue to get the income after their penalty period expired. So in that sense, they could have set up a trust that creates a double penalty. Yeah, so I think Amici are using a different definition of double penalty than what CMS is talking about. The double penalty that CMS is talking about is a situation where you first get penalized when you transfer your assets to the trust, and then you get penalized again for having assets in the trust that can be used for your benefit. You know, they're treating it as income. They're treating it as income if you get disbursements, or they're treating it as available assets if it's in the trust. Would that be a problem if the income is occurring during the penalty period? If the income is occurring during the penalty period. Because who cares what your income is if you're not eligible anyhow? That's a good question, and I don't know enough about Medicaid law. But so that's the double penalty that CMS is talking about, that you're both getting penalized on the front end for creating the trust, and then you're getting penalized again for having a trust. And so in Bulletin 64, CMS is referring to that kind of situation, and it's saying if that's going to be the result, then you look to the trust provision, because that's going to be the one that's going to control to make sure there's not a double penalty. But in Bulletin 64, and this is where I disagree, CMS has never been inconsistent. In Bulletin 64, they go on in a separate section which is specifically addressing these pooled trusts, and they say that these transfers, they say, as a result, a special needs trust, and I think it's clear that CMS was using the wrong phrase there, that they meant pooled trust, established for a disabled individual who is age 66 could be subject to a transfer penalty. So CMS has been very consistent both at the beginning when OBRA was first enacted and then just recently when they sent the memorandum to the state directors. Their consistent view has been that a transfer penalty can apply when a person over the age of 65 puts assets into a trust. Now, the double penalty that the attorney for the amici was talking about is a much different kind of double penalty. He's arguing that you get penalized when you transfer the money into the trust, and then you get penalized again because any money that's left over in the trust after you pass away goes to the state to pay for the benefits. I mean, leaving aside the fact that that's sort of a different kind of double penalty than what CMS was talking about, it's not even clear that there is any money left over to go to the state. Under the statute, the pooled trust can keep as much assets are left when the person passes away. So if a person passes away and there's $15,000 left in the trust, the trust can keep all of that money. Can you go back to the, you said the first kind of double penalty CMS was addressing, and CMS was saying what to do in that situation? Yeah, so CMS, and I think that there's a lead-in phrase that the amicus brief leaves out, but amicus says, well, and this is on page 25 and 26 of the red brief, Your Honor, where we actually quote the provision from transmittal 64. And so first CMS says that when you put assets in a trust, that is usually a transfer because you are giving up your title to the trust, to the assets. So that's the first thing that they say. And then they say that if you don't receive fair compensation, then you can have a penalty under the transfer provision. Can I just stop you there? Yes. Because the odd thing is it uses the word generally. Yeah, so. In their view, it's always. Well. In their view, it's generally. I would say that, for example, if you put your assets in a replicable trust, I'm not sure that would be a transfer because you always have the ability to get the assets back again. So I don't know if that's what CMS is referring to when they say generally. In other words, there could be some forms of trust that you create for yourself. One of which is you're the beneficiary. You're the beneficiary, but you have no control. Here it's just talking about trust generally. It's not talking about only trusts in which the settler is the beneficiary. That's right. So it is generally true that if I put my funds in a trust for other people, I've transferred it. Right, but it also doesn't say for other people there. So I guess what you're asking is. It just doesn't seem to help us. I don't know what to do with it exactly. Well, yeah. But it doesn't seem inconsistent with their position. No, that's not inconsistent, I don't think. Is there anything in this guidance that talks about a trust where the settler is the beneficiary? No, but no. Well, I don't know. I haven't read the entire bulletin. Nothing in what you quote talks about the settler being the beneficiary. That's correct. It's just about trust generally. That's correct. Can I just follow up on that, though? Because the bulletin does specifically address pooled trusts. And pooled trusts, by definition, are trusts created by the settler for his or her own benefit. Only? Well, it says it has to be the assets of the individual. Yeah, but does the beneficiary have to be the settler for a pooled trust? Well, I think yes. Subsection D would only apply. I mean, could someone else establish the trust for the Medicaid recipient, but use the Medicaid recipient's assets for it? Just a simple question. To be a pooled trust is in a condition of being a pooled trust that the beneficiary is the settler? No, but it is a condition that the beneficiary's assets be used to fund the trust. So, for example – But that won't speak to the question of in the case of a settler being the beneficiary, whether it counts as a transfer. Right, so if you're taking me all the way back to the very beginning about whether a transfer to a trust is a transfer within the meaning of the transfer position, when – No. Okay. If I understand the argument, what I thought the significance of the and individual and the individual would be, and maybe this argument isn't preserved fully, but if an individual means the individual, then the argument that a trust set up by the settler in which the settler is the beneficiary is not a transfer fails. Can't be true, because the transfer provision itself would be talking about just such a trust. Right. Okay, so they need an individual to mean another individual. Otherwise, they can't possibly say that 1A is not talking about the kind of trust that we've got here. In order to make the argument that 1A is not talking about such a trust, they're saying disposes of or transfers can't be applying to a trust in which the beneficiary holds beneficiary title to the assets. That may be an argument which they haven't preserved, but yes, that is an argument. And then the only thing left textually that I see that helps us with that is, well, they've got a problem in making that argument, because they need an individual to mean another individual, but they're stuck with this parenthetical which is talking about D4 trusts, and those D4 trusts are only trusts in which the settler is the beneficiary. Yes. So we're back to their only argument that I see standing textually is this argument that, well, don't worry about that, because that language is there just to emphasize the point that our transfer provisions in C are not meant to override the exemption we created in D4 for self-settled trusts. Right, and I think I've hopefully responded to that by saying that I just don't think that's a fair reading of that language. Our view of an individual is that it could be another individual, but it's not limited to other individuals. It means an individual, whether it's the settler, him or herself, or somebody else. But nothing about CMS guidance tells us one way or the other what the answer to that question is. Is that your view? CMS guidance tells us that when someone... We're just going back to that penalty provision. What do they do about the double penalty, the first type of double penalty? What does CMS say to do? Well, there will be no double penalty because CMS agrees that these trusts are exempt from subsection D. But what CMS is saying, and I'd have to go back and look at their transmittal letter, because I think they are specifically addressing self-settled pooled trusts there, but CMS, their interpretation won't result in double penalty because you're only applying the transfer provision because there's no dispute that these trusts are exempt from the trust provision. Unless there's further questions, Your Honors? Thank you. Your Honor, as I have to be, I'll be brief. You have to look at Subprovision 3, which says if you put money into a trust for your disabled child, including a trust under Subsection D, it's an exempt transfer. That can't be the trust of the Medicaid applicant. The very same provision is used in 4 because it's allowing people to put money in trusts for other individuals. And to try and find, of those 50 million people that I can make transfers to if I'm disabled, the question is did Congress intend, did it need to put that in to give me an exemption to fund my own trust? We go over to the trust provision, and I want to underscore how broad it is. Congress stopped the use of Medicaid, of trusted Medicaid planning, by saying if you give it away, you're penalized. If you can get any benefit, it's available to you. It's covered every trust, and now it's given an exception. And those trusts are never referred to the transfer rules, and then those trusts are given their own exception in D4. Are there some trusts in D4 in which the settler is not the beneficiary? No. I mean, there has to be. There's this technical under Draper. The settler is the person whose money funds the trust. That's the general rule. But someone else can put money into the trust, right? Can someone else benefit also? Not from that trust. No, no. I'm putting money into my disabled child's trust. That's exempt under three. And I'm putting money into my disabled grandchild's trust. My disabled grandchild, 20 years old, already has a trust. She set it up. It was from a personal injury accident, and she's funded it. I now am going into a nursing home, and I want to qualify for Medicaid. All four says is I can set up a trust for her if I want to, or I can put my money into her existing detrust. That's exactly what it's meant to allow. And that's what it allows, and that's how we use it every day. So it's somebody else's detrust. And it has to be under three. It's my child's trust. It's not my trust. My child funded the trust. Even if I'm the nominal settler because of the old rule, it's my child's money. They are under traditional trust law. They're the settler of the trust. It's their money. It's a D4A trust. It's exempt for that reason for them. And I would be penalized from funding it because it's not for my benefit unless I get the exception in C. It was D that put it there. D made it a transfer because it's not for my benefit. The only way I can fund my child's trust is by existing D4A trust is thanks to this exception. Otherwise, I would be penalized. And then let me underscore, because with all due respect, I think you've failed to appreciate the tremendous breadth of D. It is absolutely a bar to any use of trust in Medicaid planning except where there are exceptions. If the trust is for somebody else or the trustee makes transfers to someone else, a third party, treat it under C, and we have a list of exceptions, all of which we've talked about. If I do what Congress asks me to do, I set up a trust that's for my benefit. Congress says, oh, no, no, we don't want you to play games. Every penny in that trust is available. And I say, well, wait a minute, Congress. I'll do the very thing you've asked me to do. I'll agree. I'll give it to a nonprofit that's going to pool my money. I'll have my own account. And Medicaid gets paid back before the money ever goes to my family. The trust might be allowed to keep some. Some don't. I've done what you asked, Congress. I set up a trust that would have counted as mine and, therefore, would not have been transferred. That's the point of availability. But I've done what you wanted me to do to qualify for Medicaid benefits. If I'm under 65, I can use an individual trust or I can use a pool trust. If I'm over 65, I can either use an income trust. If I happen to need an income, I put it on an income cap state, or I can use a pool trust. I'm doing what Congress asked, and Congress is getting the result it wants, which is it's stopping people from using Medicaid unless they agree to pay back. And they happen to be more generous with the pool trust and wanting to keep some money. I think that's a very coherent, very logical system. It covers every possible case. It's consistent. It's fair. It avoids the overlaps that the state's theory, I think, is quite serious about. We've discussed it in a couple pages. There are five or six items that Congress just could not have been intending to do that because it had already dealt with trusts under D. Thank you, Your Honor. Thank you.